SHERLEY, BRANNIN, GUARDIAN, ET AL. *v.* Z. M. SHERLEY'S EXRS.

[Abstract Kentucky Law Reporter, Vol. 7—588, 612.]

**Undue Influence in Making a Will.**
   To constitute undue influence in the execution of a will there must be such constraint or coercion as prevents the exercise of the testator's own purpose and will and destroys free agency.

**Witnesses to a Will.**
   The statutory meaning of the word "credible" when applied to witnesses attesting a will is held to mean "competent."

Mental Capacity to Make a Will.
>    For proof of facts held to show that the testator had sufficient
>    capacity to make a will, see opinion.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

February 25, 1886.

Opinion by Judge Lewis:

Z. M. Sherley made the will and codicil in contest January 7, 1879, and died about six weeks thereafter, leaving as devisees his widow, three sons, John, Thomas and Geo. D., and two grandchildren, Brannin C. and Bettie, children of his eldest son, Lewis, who died in 1872.

The two papers were in due time probated in the county court, but an appeal was prosecuted by Brannin C. and Bettie Sherley to the court of common pleas, where a verdict and judgment were rendered that they were the last will and testament of the deceased. But upon appeal to this court that judgment was reversed and the cause remanded for a new trial. 81 Ky. 240. The case is now before us by a second appeal from the judgment in favor of the will. Three grounds seem to have been relied on by the contestants in the lower court.

1. Want of testamentary capacity.

2. Undue influence and fraud on the part of some of the devisees.

3. Insane delusion or aversion.

Having carefully considered the evidence in this case, as well as the arguments of counsel in relation to the question of the general capacity of the testator to make a valid will, we are of the opinion that there is no room for rational doubt on the subject. Numerous persons sustaining social, business and professional relations with him of the most intimate nature and of long previous standing, some of whom saw him almost daily for weeks before and after the execution of the will and all of whom visited him frequently during that period, were now called as witnesses by the propounders, and their unhesitating and invariable testimony was that he was sound in mind and memory up to a few days before his death; that he not only conversed rationally and intelligibly upon varied subjects requiring the exercise of thought and memory, but

transacted business of importance with accuracy and intelligence. On the other hand, no irrational act or conversation is shown by the contestants.

As regards the other two grounds relied on, it is necessary to refer to the provisions of the will, and with more particularity to the acts of the testator and the devisee who, it is contended, exercised the undue influence upon him. By the will there is given to the widow of the testator $60,000 in money and stocks and bonds and some other property. To Brannin C. and Bettie Sherley he gives the sum of $10,000, to be held and kept by John C. and Thomas A. Sherley and H. Ormsby as trustees, without giving security, for the period of twenty years, compounded annually, and then to be paid to them in equal parts. The residue of his estate he gives to his sons, John C., George D., and Thomas A., the share of George D. to be held by Susan W. Sherley, the widow, in trust for him. Each of the shares of the three sons is estimated to amount to about $100,000, and the reason for the inequality made between them and the two children of his deceased son, Lewis, is stated in the will by the testator to be that his son, Lewis, did not desire his two children to have a large estate and that the testator knew it was his, Lewis', fixed purpose to dispose of his estate by will so that they should receive only about $10,000 apiece, but that, he having neglected to make a will, they will receive from his, their father's estate largely in excess of what he desired them to have, and the testator therefore made the bequest in token of his affection.

It appears that the testator, Z. M. Sherley, made a will in December, 1877, in which he made substantially the same provision for his widow and for his two grandchildren, giving the same reasons therefor, as are contained in the will in contest, except that in the first will the three trustees appointed for them were not exempt from giving security as is the case in the present will. But by the will of 1877 the one-third of the residue of his estate is given to John C. Sherley in trust for the use and benefit of his wife and children, such part of the annual income arising therefrom as he may deem proper to be used for their education and support, and at his death the whole to be equally divided between his wife and children. The same provision is made in respect to Thomas H. and his wife and children. But by the will in contest one-third of such residue is given absolutely to each of the two sons.

There is no evidence whatever tending to show that either John, Thomas or anyone else influenced or attempted to influence the testator to make the will of 1877, nor is any question made as to his testamentary capacity at that time. Nor is there any evidence showing or tending to show that they or either of them advised or influenced him to make the change releasing the trustees from giving security for the $10,000 devised to Brannin C. and Bettie Sherley. There is evidence showing that John C. and perhaps Thomas Sherley requested and it may be urged that the testator so changed the will of 1877 as to give to them absolutely the shares he had by that will given in trust for their wives and children. But in our opinion there is an entire absence of proof by either of them of undue influence in legal contemplation, for the evidence shows that the testator desired each of them to have the right to control and use the fund in carrying on his business, and as soon as he was advised by counsel that they could not do so under the will of 1877 he freely and in the exercise of his own will and desire made the change so as to give the shares to each of them in their own right. To constitute undue influence there must be such constraint or coercion as prevents the exercise of the testator's own purpose and will and destroys free agency. There is nothing in the record showing or tending to show that the testator made the change in favor of John C. and Thomas Sherley by reason of undue influence, fraud or coercion, but on the contrary it was made, as the evidence clearly shows, only after he became convinced, by taking legal advice, that it was necessary to make the change in order that the two sons might have the use and benefit of the intended shares of his estate to carry on their business, which he seems to have desired from the beginning.

Counsel, however, contend that John C. Sherley fraudulently concealed from the testator some part of his indebtedness. But we do not think the testator was induced by any act of his two sons or that any fraud was practiced upon him to induce the change, for he knew John Sherley had been unfortunate in business and knew his capacity for business, and was notwithstanding induced to make the change in his will for the reason mentioned, and not under misapprehension as to the financial condition of his sons.

But certainly there is no evidence that either of his sons used any influence, persuasion or device whatever to affect the interests

of the contestants, Brannin C. or Bettie Sherley.   It appears that soon after the death of Lewis Sherley in 1872 a dispute arose between the testator and A. O. Brannin, the maternal grandfather of the contestants, as to who should raise them and who should be their guardian, the testator insisting, as he said in accordance with the wish of his deceased son, Lewis, that they should be raised by Lewis' half-sister, Mrs. Ormsby, and that her husband, H. Ormsby, should become their guardian, while A. O. Brannin was opposed to the children residing at the home of Ormsby, and to him being the guardian, insisting that the testator should act in that capacity.   The controversy produced anger and illwill between the two and they were unfriendly for several years.   But both A. O. Brannin and his wife visited the testator in his last illness, and their visits seem to have been appreciated and kindly received by the testator.   But there is no proof that the testator did or said anything previous to the time the first will was made, in December, 1877, or when the will in controversy was made, indicating that he was influenced by feelings of hostility against A. O. Brannin, or any insane delusion in respect to him, in making the comparatively small bequest to his two grandchildren.   Nor does the evidence show that his affection or solicitude for their welfare diminished on this account.

We have commented on the testimony somewhat extensively and freely in this opinion as to the effect of it, in order to save useless discussion of the numerous instructions asked by the contestants and refused, as well as those given.   As already intimated the evidence in this case is so conclusive in favor of testamentary capacity at the time the will was made, as well as that it was made by the testator without undue influence, fraud or coercion, that, even if some of the instructions bearing on the two questions had been liable to the criticism counsel makes, the contestants could not be prejudiced thereby.   As to the insane delusion in respect to A. O. Brannin, or the insane aversion to him, which it is contended the testator had, we think the instructions in regard thereto presented the issue so that the jury could not have been misunderstood or have been misled by them.

It is attempted by instruction number 7 to define insane delusion, the principal fault of which is its prolixity; but we think it is quite as favorable to the contestants as to the propounders of the will.

Moreover, in instruction 9 specific reference is made to the alleged insane aversion to A. O. Brannin, and the jury told that if it caused or materially influenced the testator in discriminating against his grandchildren they should find against the will. Instruction 10 was condemned by this court in the opinion rendered in the former appeal, not because as an abstract legal proposition it was incorrect, but because it singled out the fact of inequality and guarded it so the jury might not give weight to it. Instruction 9 is liable to the same objection and ought not to be given, but being given at the instance of the contestants No. 10 was rendered less objectionable when given in connection with it. The evidence in this case shows the testator in his conduct and conversation toward A. O. Brannin at most to have been passionate and suspicious, and even if it be conceded he was unjust and unreasonable still it does not follow he was insane.

But we think the jury had the issue of partial insanity presented so they could comprehend it, and are satisfied the rights of the contestants have not been prejudiced so as to authorize this court to further prolong litigation. The statutory meaning of the word "credible," when applied to witnesses attesting a will, has been determined by this court to be equivalent to "competent," in *Fee v. Taylor,* Law Rep., Nov., 1885, and the lower court did not err in applying to it the same meaning.

Judgment *affirmed.*

*Isaac Caldwell, John Roberts, Muir & Heyman, Horace Brannin, for appellants.*

*James Speed, Brown, Humphrey & Davis, John K. Goodloe, E. E. McKay, for appellees.*